## Davis v. Johnson.

### Dec. 15, 1942.

Charles Ferguson for appellant.

C. C. Grassham, H. F. Green and Roy G. Garrison for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

In this law suit the title to about 20 acres of land is in dispute. Reed Davis and Tom Johnson own adjoining tracts of land in Livingston county, and Davis brought this action to establish the boundary line between the tract owned by him and the tract owned by Johnson, and to quiet his title. In his answer Johnson asked that his title be quieted.

The appellee, Tom Johnson, owns a tract of land once owned by Bayliss S. Canada, later called Bayliss S. Kennedy, and purchased by Canada from Charles H. Booth April 7, 1855. In the deed from Booth to Canada the north and west boundaries of the tract are described as follows:

> "Beginning at Jno. Owens' south east corner running south 62 degrees west 100 poles to sd. Owens' south west corner; thence south 35 degrees east 54 poles to two poplars So. 68 degrees east 50 poles to a white oak and gum So. 10 degrees east 40 poles to a white oak So. 35 degrees East 30 poles to a poplar So. 63 degrees East 20 poles to a white, So. 28 degrees East 52 poles to a white oak & hickory to a survey made for Richd. Hazle * * *."

On November 13, 1896, Bayliss S. Canada (Kennedy) conveyed the land to his son, W. L. Kennedy. The description in the deed from Bayliss S. Canada to his son, in so far as it has any bearing on the line in dispute, is as follows:

> "Beginning at a stone on the south side of the Golconda road in the line of T. H. Robertson and B. S. Kennedy S. 63 W. 62 poles less 11 links to a stone, S. 25 E. 82 poles less 13 links to a stone Jno. Owens, south east corner S. 63 W. 108 poles to a white oak

Owens S. W. corner S. 23½ E. 54 poles to two fallen poplars S. 68 E. 50 poles to a white oak, dogwood and poplar pointer * * *.''

The same description appears in the deed of March 8, 1938, from the widow and heirs of W. L. Kennedy to the appellee, Tom Johnson.

The dispute involves the correctness of the third call in appellee's deed which reads: ''south 63 west 108 poles to a white oak, Owens' southwest corner.'' This call is the same as the call in the deed of November 13, 1896, from Bayliss S. Kennedy to his son, W. L. Kennedy. This call in the deed of April 7, 1855, from Charles H. Booth to Bayliss S. Kennedy, reads. ''Beginning at John Owens' south east corner running south 62 degrees west 100 poles to sd. Owens' south west corner.'' The line in dispute is made up of the next six calls and runs in a zigzag fashion a distance of 246 poles to a point described in the Booth deed as ''a white oak and hickory,'' and in the deed from the widow and heirs of W. L. Kennedy to appellee as ''a white oak stump, and walnut and hickory pointers.'' The location of this line depends upon the correct location of its starting point; that is, the end of the line running from the southeast corner of the John Owens land to Owens' southwest corner. It is appellant's contention that the latter line is 100 poles long as stated in the Booth deed, while appellee contends it is 108 poles long as stated in the deed executed to him by the widow and heirs of W. L. Kennedy. There is no dispute as to the location of the beginning point of this line; that is, the southeast corner of the John Owens land, nor as to its course. The dispute is as to its length and involves a difference of 8 poles. The appellee in his answer alleged that it was 108 poles long, but in describing the zigzag line in dispute he set up calls differing from the calls both in his deed and in the Booth deed.

Two surveyors were appointed by the chancellor to make a survey of the disputed line. They filed a report in which they fixed the beginning point as the end of a line running from John Owens' southeast corner S. 63 W. 108 poles to a white oak, this being the southwest corner of John Owens', now C. E. Babb's land. They made the next call, that is, the first call in the disputed line, S. 32½ E. 54 poles to two poplars, instead of S. 23½ E. 54 poles to two fallen poplars as it appeared in appellee's deed. This change was necessary in order to reach the

two poplars. It appears that S. 23½ E. 54 poles from the end of the preceding line, if that line is 100 poles long as claimed by appellant, will reach the two poplars. The remaining five calls in the line as reported by them differ from the corresponding calls both in the Booth deed and appellee's deed and also from the calls claimed by appellee in his answer to be the correct ones. The surveyors seem to have been controlled in their location of the line by the remains of an old picket fence which they followed a short distance and by marked trees. The proof shows that the picket fence had been constructed many years ago by W. L. Kennedy, and had practically disappeared. Kennedy never claimed that it was on the line. Mrs. W. L. Kennedy testified, and admitted, that the fence did not follow the line described in her husband's deed. The proof also shows that the marked trees are young, and the markings are comparatively recent. There are marked trees both north and south of the line followed by the surveyors. J. E. Sullinger, one of the surveyors, was introduced as a witness by appellee, and produced a plat he had prepared showing the disputed line. Later he was called by the appellant and, while on the witness stand, made a plat with his instruments using the calls given him by counsel for appellant. The calls used were those in the Booth deed and in the deeds of adjoining landowners. When the plat was completed the line in dispute was located exactly as contended for by appellant and fitted perfectly with the lines in the adjoining landowners' deeds. The chancellor in his judgment fixed the beginning point of the disputed line at the end of a line 108 poles long, as claimed by appellee, but from that point the line fixed by him differed from the line claimed by appellant and appellee, respectively, as the correct one, and also from the line platted by the surveyors in their report. The line as established in the judgment runs approximately through the center of the disputed strip of land and leaves 10 acres on appellant's side and 10 acres on appellee's side.

A large amount of proof was heard, and to state even the substance of it, or to attempt to analyze it, would extend this opinion to undue length and would serve no useful purpose. Much of the evidence was directed to the location of trees and other natural objects referred to in the old deeds which have long since disappeared. We have examined the record carefully and are convinced that the beginning point of the line in dispute is at the

end of a line 100 poles long running from the southeast corner of the John Owens land, and from that point follows the calls in the Booth deed. The great preponderance of the evidence supports appellant's theory. The call for 108 poles in the deed from Bayliss Canada to his son was patently an error, the figure "8" being substituted for the figure "0" through mistake.

Appellee pleaded adverse possession and champerty, the latter defense being based on the claim that he was the owner and in possession of the land in dispute when the appellant obtained his deed. The proof was not sufficient to sustain appellee's claim of title by adverse possession. The land in dispute is a strip 8 poles wide and extends along the side of a hill a distance of about 246 poles and is unenclosed. Apparently it has little value. Most of it has never been enclosed, and the picket fence referred to in the proof was never claimed to be on the line.

The judgment is reversed, with directions to enter a judgment in conformity herewith.